Filed & Entered
On Docket
November 7, 2012

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

**In re:**

    **Culinary Health Innovations, LLC,**                                      **Chapter 11 Case**
            **Debtor-in-Possession.**                                              **# 12-10529**

_____

*Appearances*:    Rebecca A. Rice, Esq.            John J. Kennelly, Esq.           Gary L. Franklin, Esq.
                      Rutland, VT                                Rutland, VT                   Burlington, VT
                      For the Debtor-in-Possession      For the Claimant          For the Convertible
                                                                                                                        Note Holders

**MEMORANDUM OF DECISION**
**ADDRESSING EVIDENTIARY OBJECTIONS AND**
**SUSTAINING THE DEBTOR-IN-POSSESSION'S OBJECTION TO CLAIM # 6-1**

      Culinary Health Innovations, LLC (the "Debtor-in-Possession") has filed an objection to claim # 6-1 of Culinary Health Innovations Holdings, LLC (the "Claimant").  For the reasons set forth below, the Court determines that the Claimant has failed to meet the ultimate burden of proving the validity of its claim, and therefore sustains the objection to claim # 6-1.

## JURISDICTION

      The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), over which the Court has authority to enter a final order on the merits.

## PROCEDURAL AND FACTUAL BACKGROUND

      On June 14, 2012, the Debtor-in-Possession filed its voluntary Chapter 11 petition (doc. # 1).  On July 10, 2012, the Debtor-in-Possession filed a motion seeking a determination that its contract with the Claimant expired pre-petition, or alternatively seeking to reject its executory contract with the Claimant (doc. # 11).  On August 9, 2012, the Claimant filed its opposition to the motion (doc. # 21).  The Debtor-in-Possession filed a reply on August 16, 2012 (doc. # 24), and the Claimant filed a sur-reply on August 28, 2012 (doc. # 36).  On September 21, 2012, the Claimant and the Debtor-in-Possession filed memoranda of law (doc. ## 43, 46).

      On September 28, 2012, the Court held a hearing on the motion, at which Rebecca A. Rice, Esq., appeared on behalf of the Debtor-in-Possession, and Jack J. Kennelly, Esq., appeared on behalf of the

Claimant. At the hearing, the parties stipulated that the portion of the motion seeking to reject the executory contract would be granted subject to confirmation of the Debtor-in-Possession's Chapter 11 plan, and the Claimant indicated at the hearing that it would file a proof of claim for rejection damages, so the issue could be adjudicated prior to the confirmation hearing.

On October 8, 2012, the Claimant filed a proof of claim seeking rejection damages in the amount of $2,855,000.00 to $22,125,682.00 (claim # 6-1, pp. 1–2). The Claimant attached to the proof of claim a third-party analysis of the Debtor-in-Possession's possible range of values prepared by Silverglade Capital Partners, LLC ("Silverglade") (claim # 6-1, pp. 3–12), an overview of Silverglade and its principal, Greg S. Heller (claim # 6-1, pp. 13–18), and Mr. Heller's resume (claim # 6-1, pp. 19–20). On October 15, 2012, the Debtor-in-Possession filed an objection to claim # 6-1 (doc. # 73).[1]

On October 16, 2012, the Court held an evidentiary hearing on the objection to claim # 6-1,[2] at which Rebecca A. Rice, Esq., appeared on behalf of the Debtor-in-Possession, Jack J. Kennelly, Esq., appeared on behalf of the Claimant, and Gary L. Franklin, Esq., appeared on behalf of the Henry S. Smith Revocable Trust, Michael McLoud, John Kelley, Nigel Pearce, Katherine Otte, David Laub, Robert Baird, H. Bain Gill, David Bollinger, and Joseph Sheperd (the "Convertible Note Holders").[3] David Thompson, president and CEO of the Debtor-in-Possession, Greg Heller, sole employee of Silverglade, and Jeremy Friedman, vice president of the Claimant, testified at the hearing. At the conclusion of the hearing, the Court took under advisement the objection to claim # 6-1, as well as objections to admission of the Claimant's two exhibits.

On October 19, 2012, the Court entered a post-trial scheduling order (doc. # 76). The parties subsequently filed post-trial memoranda of law (doc. ## 78, 83, 84). On October 29, 2012, the Convertible Note Holders filed a written objection to admission of the Claimant's Exhibit 1 (doc. # 80), the Debtor-in-Possession filed a written objection to admission of the Claimant's Exhibits 1 and 2 (doc. # 81), and the Claimant filed a memorandum in support of admission of its exhibits (doc. # 82).

The objection to claim # 6-1 and the objections to admission of the Claimant's Exhibits 1 and 2 are now fully submitted.

## DISCUSSION

---

[1] The Debtor-in-Possession filed two previous objections to claim # 6-1 (doc. ## 66, 72), which it withdrew (see docket entries dated October 15, 2012).

[2] The Debtor-in-Possession and the Claimant filed a joint notice of evidentiary hearing on October 12, 2012 (doc. # 67).

[3] On October 5, 2012, the Claimant filed an objection to the claims of, *inter alia*, the Convertible Note Holders (doc. # 54).

### Objections to Admission of the Claimant's Exhibit 1

At the evidentiary hearing, the Claimant moved for admission of the Claimant's Exhibit 1 (Tr. 72:5–6), a copy of the Claimant's proof of claim with attached valuation report prepared by Silverglade, overview of Silverglade and Mr. Heller, and resume of Mr. Heller.  The Debtor-in-Possession objected to admission of the valuation report on the basis that the valuation provided did not comport with the relevant legal standards for valuation (Tr. 72:15–25).[4]  The Convertible Note Holders objected to admission of the valuation report on the basis of hearsay (Tr. 73:3–4).  The parties subsequently filed post-trial memoranda in support of their positions (doc. ## 80, 81, 82).[5]

Federal Rule of Evidence 801 provides, in relevant part:

(a)   Statement. "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

(b)   Declarant. "Declarant" means the person who made the statement.

(c)   Hearsay. "Hearsay" means a statement that:

  (1)   the declarant does not make while testifying at the current trial or hearing; and

  (2)   a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(a)–(c).  "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."  Fed. R. Evid. 802.

Here, the written valuation report provided by Mr. Heller as the sole employee of Silverglade (Tr. 42:3–8) values the Debtor-in-Possession at $2.9 million to $22.1 million (Claimant's Ex. 1, p. 3), which is an out-of-court statement the Claimant offers in evidence to prove its claim of $2.85 million for rejection damages (Tr. 54:15–23; Tr. 73:19–74:11).[6]

The Claimant argues that the Silverglade valuation report is admissible because any market reports included in the report were obtained from publicly available financial information and are admissible pursuant to Federal Rule of Evidence 803(17) (doc. # 82, p. 2).  Although this rule does create an exception to the hearsay rule for "[m]arket quotations, lists, directories, or other compilations that are

---

[4] Although the Debtor-in-Possession phrased its objection as being to admission of the Claimant's Exhibit 1, the substance of the objection pertains only to the Silverglade valuation report portion of the exhibit (see Tr. 72:15–25).

[5] In its post-trial memorandum, the Debtor-in-Possession also argued that the report was inadmissible as hearsay (doc. # 81, pp. 1–2).

[6] The Claimant clarified at the evidentiary hearing that, although the proof of claim for claim # 6-1 lists the amount of the claim as a range from approximately $2.85 million to approximately $22 million, the Claimant seeks rejection damages of $2.85 million (Tr. 73:19–74:11).

generally relied on by the public or by persons in particular occupations," Fed. R. Evid. 803(17), the Claimant's argument does not address the hearsay issue the Silverglade valuation report itself presents. The Claimant has not identified any exclusion or exception to the hearsay rule that would permit admission of Silverglade valuation report. Accordingly, the hearsay objection to admission of that portion of the Claimant's Exhibit 1 (Claimant's Ex. 1, pp. 3–12) is sustained.[7] As there were no objections to the remaining portion of the Claimant's Exhibit 1, i.e., the proof of claim for claim # 6-1, the overview of Silverglade and Mr. Heller, and Mr. Heller's resume, (Claimant's Ex. 1, pp. 1–2, 13–20), it is admitted.

### Objection to Admission of the Claimant's Exhibit 2

At the evidentiary hearing, the Claimant also moved for admission of the Claimant's Exhibit 2 (Tr. 72:5–6), a copy of an email allegedly sent by Mr. Thompson, president and CEO of the Debtor-in-Possession, to Mr. Friedman, vice president of the Claimant, on January 11, 2012, with attachments that included four pages of Green Mountain Food Nutrition, LLC, forecasted statements of operations. The Debtor-in-Possession objected to admission of the email on the basis that Mr. Thompson testified that he did not recall having seen the email or attachments, and the attachments to the email were prepared by Green Mountain Food and Nutrition, LLC, rather than by the Debtor-in-Possession (Tr. 72:9–14). The Debtor-in-Possession and the Claimant subsequently filed post-trial memoranda in support of their positions (doc. ## 81, 82).

Federal Rule of Evidence 901 provides, in relevant part:

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only—not a complete list—of evidence that satisfies the requirement:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

Fed. R. Evid. 901(a)–(b).

Here, Mr. Thompson testified that, although he did not specifically recognize the email, it appeared to be an email he sent to Mr. Friedman instructing him to use the attached files (Tr. 35:24–36:10). Mr. Thompson further testified that he had prepared the numbers in the subject forecasted statements of operations and had apparently forwarded them to Mr. Friedman in January 2012, although he did not specifically recall doing so (Tr. 35:11–21). Mr. Friedman testified that Mr. Thompson sent the

---

[7] Since the Court has sustained the hearsay objection to the valuation report portion of the Claimant's Exhibit 1, there is no need for the Court to separately address the Debtor-in-Possession's objection to the same portion of that exhibit on other grounds.

email to him on January 11, 2012, along with a number of attachments prepared by one of Mr. Thompson's original CFO consultants (Tr. 76:16–77:14). Based on this testimony, the Claimant has satisfied the requirement of authenticating the Claimant's Exhibit 2 as an email sent by Mr. Thompson to Mr. Friedman on January 11, 2012, with attached Green Mountain Food Nutrition, LLC, forecasted statements of operations prepared by Mr. Thompson or his agent. Accordingly, the Debtor-in-Possession's objection to admission of Claimant's Exhibit 2 on authentication grounds is overruled, and the exhibit is admitted.

## **Objection to Claim # 6-1**

The statute governing allowance of claims, 11 U.S.C. § 502, provides, in relevant part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

   (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . ..

. . .

(g)

   (1) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(a)–(b)(1), (g)(1).[8] Federal Rule of Bankruptcy Procedure 3001 provides, in relevant part:

(a) Form and content. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) Who may execute. A proof of claim shall be executed by the creditor or the creditor's authorized agent . . ..

(c) Supporting information.

   (1) Claim based on a writing. When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim . . ..

---

[8] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

5

. . .

 (f) Evidentiary effect.  A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr. P. 3001(a)–(c)(1), (f).

  The burden of proof for claims brought under Bankruptcy Code § 502(a) rests on different parties at different times.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).  "Initially, the claimant must allege facts sufficient to support the claim."  Id.  If the averments in the claim meet this standard of sufficiency, the claim is "prima facie" valid.  Id. (citation omitted).  The objecting party must rebut the presumption of prima facie validity by producing "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations . . . essential to the claim's legal sufficiency."  In re Weatherell, 2010 Bankr. LEXIS 3492, *3, 2010 WL 3938225, *1 (Bankr. D. Vt. Sept. 29, 2010); see also In re Allegheny Int'l, Inc., 954 F.2d at 173–74; In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  If the objecting party succeeds in rebutting the presumption of prima facie validity, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.  See In re Weatherell, 2010 Bankr. LEXIS 3492 at *3–4, 2010 WL 3938225 at *1; see also In re Allegheny Int'l, Inc., 954 F.2d at 173–74; In re Oneida Ltd., 400 B.R. at 389.

  Here, the Claimant filed its proof of claim on October 8, 2012, using Official Form 10, which was executed by Mr. Friedman as vice president of the Claimant (Claimant's Ex. 1, pp. 1–2).  The proof of claim set forth the amount of the claim as "$2,855,000.00 to $22,125,682" (Claimant's Ex. 1, p. 1, ¶ 1), and indicated the Claimant had attached documents supporting its claim (Claimant's Ex. 1, p. 2, ¶ 7).  The Claimant attached the valuation report, overview, and resume (see claim # 6-1).  The Court finds this is sufficient to characterize claim # 6-1 as prima facie valid.  The burden thus shifts to the Debtor-in-Possession to rebut the presumption of validity.  See Fed. R. Bankr. P. 3001(a)–(c)(1), (f); see also In re Weatherell, 2010 Bankr. LEXIS 3492 at *3, 2010 WL 3938225 at *1; In re Allegheny Int'l, Inc., 954 F.2d at 173–74; In re Oneida Ltd., 400 B.R. at 389.

  In its objection to claim # 6-1 (doc. # 73), the Debtor-in-Possession presents several arguments that call into question the validity of the valuation report attached to the Claimants' proof of claim.  The Debtor-in-Possession argues, *inter alia*, that the report does not use a reliable valuation methodology or include sufficient information for the Court to verify the values presented (doc. # 73, pp. 4–5), and fails to use comparable companies in its calculations (doc. # 73, pp. 9–10).  The Court finds the Debtor-in-Possession has put forth sufficient arguments to rebut the presumption of prima facie validity, and the burden therefore reverts to the Claimant to prove the validity of its claim.  See In re Weatherell, 2010

6

Bankr. LEXIS 3492 at *3–4, 2010 WL 3938225 at *1; see also In re Allegheny Int'l, Inc., 954 F.2d at 173–74; In re Oneida Ltd., 400 B.R. at 389.

At the evidentiary hearing, the Claimant presented the testimony of Mr. Heller in support of its claim for rejection damages,[9] and sought admission of the Silverglade valuation report provided by Mr. Heller (Claimant's Ex. 1, pp. 3–12). As noted above, the report was not admitted because the Court sustained the hearsay objection to that portion of the Claimant's Exhibit 1.

Mr. Heller testified at the hearing that he arrived at the range of values for the Debtor-in-Possession by applying certain multiples and discounts to the projections Mr. Thompson provided as attachments to the January 2012 email (Tr. 56:20–57:11; Claimant's Ex. 2).[10] Mr. Heller testified that the companies he used in his equity comparable company analysis had an enterprise value or market cap of billions of dollars (Tr. 58:17–21), and admitted that the Debtor-in-Possession was a start-up company with no revenues (Tr. 58:12–13). Mr. Heller acknowledged that start-ups are risky ventures and observed that most start-up companies fail (Tr. 60:23–61:10). Mr. Heller conceded that the chance of future earnings with any start-up is speculative, and thus the future projections for the Debtor-in-Possession he relied on to arrive at his valuation were speculations (Tr. 61:11–20). He further testified that his valuation was based on the assumption that the Debtor-in-Possession would receive a future investment of $7.5 million (Tr. 61:24–63:2). Mr. Thompson, president and CEO of the Debtor-in-Possession (Tr. 5:6–7), testified that the Debtor-in-Possession did not have any business arrangement with anyone for an additional capital infusion of $7.5 million (Tr. 29:13–16).

The Claimant argues that its computation of rejection damages is based on the projections that Mr. Thompson prepared and provided to the Claimant, and the Debtor-in-Possession should be precluded from now arguing that the projections are too speculative to be relied upon in computing damages based upon projected future performance. (doc. # 78, p. 9, ¶ 24). The Claimant cites American General Corporation v. Continental Airlines Corporation, 622 A.2d 1 (Del. Ch. 1992), in support of its argument.

---

[9] The Debtor-in-Possession argues in its objection to claim that the valuation report should be excluded from evidence on the basis that Mr. Heller is not qualified or capable to opine on business valuation (doc. # 73, pp. 3, 5–6). However, the Debtor-in-Possession did not file a motion *in limine* objecting to Mr. Heller's testimony or object to his testimony at trial. Rather, the Debtor-in-Possession called Mr. Heller as an adverse witness (Tr. 41:8–20). Further, although the Convertible Note Holders argue in their post-trial memorandum that Mr. Heller's testimony should be excluded as speculative or conjectural (doc. # 84, p. 2), they did not raise this argument in a motion *in limine* or at trial. Accordingly, the Court finds that the Debtor-in-Possession and the Convertible Note Holders have waived any objection to the admission of Mr. Heller's testimony.

[10] Mr. Heller testified that he used an implied enterprises value analysis, as well as multiples from a similar transaction analysis and an equity comparable company analysis, to arrive at his valuation (Tr. 50:3–14). The Court makes no determination regarding the acceptability of Mr. Heller's chosen valuation methodologies. Rather, the Court's analysis focuses on the alleged speculations and assumptions underlying Mr. Heller's valuation, and whether Mr. Heller's testimony is reliable for the purpose of computing rejection damages.

In <u>American General Corporation</u>, the court found that in the subject damages valuation dispute, it was faced with the same uncertainty that confronts the courts in conversion cases:

> The hallmark of conversion cases is the interference with the plaintiff's ability to transfer securities he owns or to which he is entitled. The injury that the plaintiff suffers is the deprivation of his range of elective action, and by applying the conversion measure of damages a court endeavors to restore that range of elective action. To require the plaintiff to show that he would have sold his securities, had he been able, is to require him to prove that he would have taken the "very steps" that defendant's "wrongful act . . . precluded him from taking . . .."
>
> The defendant's acts prevent a court from determining with any degree of certainty what the plaintiff would have done with his securities had they been freely alienable. Because it is the defendant who creates this uncertainty, "fundamental justice requires that, as between [the plaintiff] and [the defendant], the perils of such uncertainty should be "laid at defendant's door."

<u>Id.</u> at 10 (citations omitted). The court in <u>American General Corporation</u> found that the best approach to measuring the plaintiff's damages was a variation of the formula used in conversion cases, where the defendant had interfered with the plaintiff's ability to sell its warrants. <u>Id.</u> at 8–9. The court did not determine that the plaintiff's damages could be based on speculation due to the defendant's actions; rather, it found that damages could not be based upon speculation. <u>Id.</u> at 12 (citing <u>Bigelow v. RKO Radio Pictures, Inc.</u>, 327 U.S. 251, 264 (1946)).

Likewise, consequential damages for breach of contract in a bankruptcy case must be demonstrated with reasonable certainty; they cannot be speculative. See <u>Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.</u>, 650 F.Supp.2d 314, 322–23 (S.D.N.Y. 2009); accord <u>Tanner v. Exxon Corp.</u>, 1981 Del. Super. LEXIS 819, *3, 1981 WL 191389, *1 (Del. Super. Ct. July 23, 1981); <u>PharmAthene, Inc. v. SIGA Techs., Inc.</u>, 2010 Del. Ch. LEXIS 234, *34–35, 2010 WL 4813553, *11 (Del. Ch. Nov. 23, 2010). Here, Mr. Heller admitted at the hearing that the chance of future earnings with a start-up such as the Debtor-in-Possession was speculative, as were the projections upon which his valuation was based. Further, Mr. Heller admitted that his valuation was based on the assumption that the Debtor-in-Possession would receive $7.5 million, and Mr. Thompson credibly and persuasively testified that there was no such arrangement. The Court finds that Mr. Heller's valuation of the Debtor-in-Possession is based upon speculation and is unreliable. Thus, the Court finds that the Claimant has failed to meet its ultimate burden of proving the validity of claim # 6-1 by a preponderance of the evidence. See <u>In re Weatherell</u>, 2010 Bankr. LEXIS 3492 at *3–4, 2010 WL 3938225 at *1; see also <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d at 173–74; <u>In re Oneida Ltd.</u>, 400 B.R. at 389. Accordingly, the Court sustains the

objection to claim # 6-1.[11]

## CONCLUSION

For the reasons set forth above, the Court sustains the hearsay objection to admission of the Silverglade valuation report portion of the Claimant's Exhibit 1 (Claimant's Ex. 1, pp. 3–12), admits the remaining portion of the Claimant's Exhibit 1 (Claimant's Ex. 1, pp. 1–2, 13–20), overrules the objection to admission of the Claimant's Exhibit 2, finds that the Claimant has failed to meet the ultimate burden of proving the validity of its claim, and sustains the objection to claim # 6-1.

This memorandum constitutes the Court's findings of fact and conclusions of law.

_____
Colleen A. Brown
United States Bankruptcy Judge

November 7, 2012
Burlington, Vermont

---

[11] As the Court sustains the objection to claim # 6-1 on the basis that Mr. Heller's valuation of the Debtor-in-Possession is based upon speculation and is unreliable, the Court finds that there is no need to address the additional arguments the Debtor-in-Possession asserts in its objection to this claim and post-trial memorandum (see doc. ## 73, 83).